Ralph **PUCCI** and Bruce **Johnson, Plaintiffs,**

v.

Emil **STAVRIOTIS, Louis Santi, Gerald Litwin, and Clapp and Eisenberg, Defendants.**

No. 87 C 6860.

United States District Court, N.D. Illinois, E.D.

Oct. 24, 1989.

William M. Phelan and Thomas F. Burke, Phelan & Doyle, Chicago, Ill., for plaintiffs.

John J. Held, McAndrews, Held & Malloy, Ltd., Chicago, Ill. and Ronald R. Wzwrzyn and James T. McKeown, Foley and Lardner, Milwaukee, Wis., for defendants.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

The parties are before the court on cross-motions for summary judgment and plaintiffs' motion to amend their complaint. Plaintiffs' case is based upon violations of federal and state securities laws, as well as Illinois common law. Complete diversity exists between the parties and over $50,000 are at issue. Thus, all claims are properly before this court. Defendants have argued that plaintiffs' claims are time-barred, that even if they are not time-barred, the plaintiffs signed general releases which preclude this litigation and, in any case, the

claims are meritless. Because this court agrees that the claims are time-barred (and the proposed amendment does not cure the defect), it will not address defendants' other arguments.

The allegations underlying this case were discussed extensively in an earlier opinion, *Pucci v. Santi,* 711 F.Supp. 916 (N.D.Ill. 1989) (*"Pucci II"*). Therefore, they will be only briefly reiterated here. Plaintiffs Ralph Pucci and Bruce Johnson are suing Gerald Litwin and his law firm, Clapp & Eisenberg.[1] Several of plaintiffs' claims were dismissed in *Pucci II;* remaining are claims arising under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) ("§ 10(b)"); Illinois securities law, Ill.Rev.Stat. ch. 121½, ¶ 137.5, 137.8; Illinois consumer fraud law, Ill.Rev.Stat. ch. 121½, ¶ 270a(e); and Illinois common law pertaining to fraud and breach of fiduciary duty.

Briefly, plaintiffs claim that they were defrauded in connection with their purchase of interests in a limited partnership formed to support a coal mining venture. Plaintiffs each invested $60,000 in the partnership, JPR Associates ("JPR"), in April 1981. Litwin was the attorney who prepared the Private Placement Memorandum ("PPM") and tax opinion which were distributed in connection with the partnership shares. It later became apparent that some of the properties which were to be developed by the partnership did not contain the anticipated coal reserves, title was inadequate as to others of them and, consequently, plaintiffs' interests in the partnership became worthless. The plaintiffs each received a PPM either before they purchased their share or within about a year of that date.[2] Neither plaintiff, however, ever read the PPM, which contained extensive warnings of the risks associated with the investment (PPM pp. 8–12), including that the title documents for some properties had not been received as of the date of the PPM (PPM at 10), and that there was

---

1. Originally, plaintiffs also named Emil Stavriotis and Louis Santi as defendants. However, Stavriotis has been dismissed and a default judgment has been entered against Santi.

2. The record contains a letter transmitting a copy of the PPM to Pucci in 1982. Johnson has made no claim that he did not receive the PPM at the time of his investment.

no guarantee as to the adequacy of the coal reserves (PPM at 9). The PPM also contained explicit warnings that prospective investors should consult their own attorneys, rather than rely on Litwin's representations, before deciding whether to invest in JPR. (PPM at iii).

Plaintiffs also received a letter from Litwin informing them of various problems with their investment, including the title problems and lack of adequate coal reserves, in May 1982. The partnership was dissolved in September 1983, and both plaintiffs signed general releases of defendants at that time. Nonetheless, plaintiffs claim that they were unaware that they had a cause of action against defendants until September 1986, when Pucci was deposed in connection with a suit filed against defendants by another partner. This lawsuit was brought a year later, in August 1987.

## MOTION FOR SUMMARY JUDGMENT

■ After an extensive review of the law, this court concluded in *Pucci II* that plaintiffs' allegations were sufficient, if proven, to toll the statute of limitations for all of plaintiffs' remaining claims. Specifically, this court held that the statute would be tolled if plaintiffs were able to demonstrate that defendants' alleged wrongdoing was fraudulently concealed from them, or that Litwin was their fiduciary, with a duty to disclose, who nonetheless engaged in a fraudulent scheme to hide wrongdoing. The latter circumstance would toll the statute even in the absence of affirmative misrepresentations. *Pucci II* at 923. Defendants have gathered substantial evidence to defeat that inference.

The PPM, which neither plaintiff denies receiving, expressly states that Litwin was *not* acting as the attorney for the limited partners. (PPM at iii). That statement, of course, is not dispositive. It is possible that Litwin and the plaintiffs could have consented to an attorney-client relationship despite the PPM disclaimer. *Westinghouse Electric Corp. v. Kerr–McGee Corp.*, 580 F.2d 1311, 1316–20 (7th Cir. 1978) (attorney-client relationship may be inferred where "client" reasonably perceives that it exists).

This court suggested, but did not rule, in *Pucci II* that if Litwin was the attorney for the limited partnership, he was also the attorney for each of the partners. *Pucci II* at 923. If he was the partners' attorney, he probably owed them a fiduciary duty. *Id.* Fiduciary duty or not, however, the statute of limitations may be tolled only if plaintiffs can show that Litwin fraudulently concealed wrongdoing from them. If Litwin was not their fiduciary, then plaintiffs must further demonstrate their own due diligence in attempting to discover the wrong. *Id.*

As stated earlier in this opinion, the PPM points out nearly all the problems of which plaintiffs now complain, clearly denoting them in the section entitled "Risk Factors." (PPM at 8–12). That plaintiffs did not read it is unfortunate, but obviously not the result of Litwin's concealment. Clearly, the failure to read the PPM negates any argument that these two sophisticated investors exercised any semblance of due diligence.[3]

Even assuming, *arguendo*, that the PPM did not put them on notice of potential problems with the investment, plaintiffs received a letter from Litwin in May 1982 which pointed out problems with title to some of the land and with the anticipated amount of coal reserves. Plaintiffs argue that the letter they received detailed problems with another partnership: Newpar, Ltd. ("Newpar"). Thus, it could not have served to put them on notice of JPR's deficiencies. That, however, is a spurious argument. The PPM spends *several pages* explaining Newpar's relationship with JPR.

---

**3.** Pucci and Johnson both have substantial investment credentials. Pucci is a commodities broker registered with the Commodity Futures Trading Commission who, at the time of his investment in JPR, was trading commodities both for himself and for large commercial clients. Defendants' statement of Material Facts as to Which there is No Dispute, ¶¶ 1, 2. Johnson is a commodities broker and a member of the Chicago Mercantile Exchange, and is president of Packers Trading Co. He is also an attorney. *Id.*, ¶¶ 4, 5.

In fact, the property which is the subject of the JPR partnership was leased from Newpar. (PPM at 19–22). Accordingly, a letter informing the JPR partners of problems encountered with the Newpar property *per se* informed them of problems with the JPR property. The relationship of Newpar to JPR would have been obvious to anyone who took the time to even briefly review the PPM.

 Equitable tolling is not available to toll a statute of limitation until a cause of action is presented in its entirety to the complaining party; rather, it tolls the statute of limitations only until the party has enough facts to put him on notice of his potential claim. *Crowell v. Bilandic*, 81 Ill.2d 422, 411 N.E.2d 16, 44 Ill.Dec. 110 (1980) (petitioners could not claim fraudulent concealment sufficient to toll the statute of limitations where they had easy access to the information which would have informed them of facts giving rise to their claim); *see also Hupp v. Gray*, 500 F.2d 993, 996 (7th Cir.1974). Thus, since plaintiffs had sufficient information by May 1982 to put them on notice of a potential claim against Litwin, they lost the benefit of equitable tolling at that time and each of the applicable statutes of limitations began to run.

The limitations period for claims arising under Illinois securities law is three years.[4] Plaintiffs also brought a claim under the Illinois Consumer Fraud and Deceptive Practices Act; that statute has a three-year limitation period as well. The common law fraud and breach of fiduciary duty claims are each subject to a five-year limitation. The § 10(b) claim is subject to the analogous state limitation period, that is, three years. *Suslick v. Rothschild Securities Corp.*, 741 F.2d 1000, 1004 (7th Cir.1984). Whether or not these limitations periods may have been tolled at all, they each began to run no later than May 1982 and thus each expired by the time plaintiffs filed their complaint, in August 1987.

---

4. After plaintiffs' initial investment in JPR, but prior to their alleged discovery of their cause of action, the Illinois legislature modified the statute of limitations to create a five-year statute of repose. The effect of that change was the subject of a lengthy discussion in *Pucci II*. However, since this court has ruled that the cause of action was discovered no later than 1982, the former statute disposes of the claims.

## MOTION TO AMEND THE COMPLAINT

 After the motions for summary judgment were filed, and after two years of discovery, plaintiffs also moved to amend their complaint to allege a further instance of fraud, specifically, that the partnership was undersubscribed. Defendants responded to the motion with a general statement that they would be prejudiced if the complaint were amended at this late date. This court requested that defendants submit a more specific statement of the manner in which they would be prejudiced, but defendants have not done so. Nonetheless, the statute of limitation, discussed above, makes the motion to amend futile.

Plaintiffs had enough information by 1982 to put them on notice of problems with the partnership. That there was yet another problem of which they were not aware does not suffice to toll the statute beyond that date. A proposed amendment which could not survive a motion for summary judgment should not be allowed. See *Wilson v. American Trans Air, Inc.*, 874 F.2d 386, 392 (7th Cir.1989); see also cases cited in *In re Olympia Brewing Co. Securities Litigation*, 674 F.Supp. 597, 605 (N.D.Ill.1987). Accordingly, plaintiffs' motion to amend their complaint is denied.

## CONCLUSION

For these reasons, summary judgment is granted as to defendants Litwin and Clapp & Eisenberg. Defendant Stavriotis has already been dismissed from the case and a default judgment was entered against defendant Santi. The motion to amend the complaint is denied.